**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**AIKEN DIVISION**

| | |
|---|---|
| Nyeaijah Saxon, Individually and as Personal Representative for the Estate of M.F., minor,<br><br>Plaintiff,<br><br>v.<br><br>The Scotts Company, LLC, Wal-Mart Stores, Inc., Wal-Mart Stores East, L.P., and Jaycee Foust, Jr.,<br><br>Defendants. | State Civil Action No. 2025-CP-06-00392<br><br>Case No. 1:25-cv-13510-JFA<br><br><br><br>**NOTICE OF REMOVAL** |

Defendants Walmart Inc. (named in the Complaint as "Wal-Mart Stores, Inc."), Wal-Mart Stores East, L.P.[1] (together, "Wal-Mart"), and The Scotts Company LLC ("Scotts") (collectively, "Defendants"), hereby give notice that this case is removed from the South Carolina Circuit Court of Common Pleas, Barnwell County, to the United States District Court for the District of South Carolina, Aiken Division, because this Court has original diversity jurisdiction under 28 U.S.C. §§ 1332(a) and 1441(a).

**INTRODUCTION**

1.      This case arises from tragic circumstances.  Plaintiff Nyeaijah Saxon filed this action individually and as personal representative of her deceased minor child, "M.F."  Plaintiff alleges that M.F. passed away after ingesting insecticide allegedly manufactured by Scotts and sold by Walmart.  Plaintiff alleges that she used a Scotts insecticide—which is intended for

---

[1] The Complaint incorrectly places a comma between "Stores" and "East," which has been corrected here. Wal-Mart asks that the case caption be corrected going forward.

outdoor use on fire ant mounds—to combat cockroaches inside a home, and that M.F. inadvertently ingested some of the insecticide.

2.      Both Scotts and Walmart are diverse Defendants, and each consents to removal of this action to federal court per 28 U.S.C. § 1446(b)(2)(A).

3.      The Complaint also names as a Defendant Jaycee Foust, Jr., an individual and purported South Carolina resident. According to the Complaint, Mr. Foust is, at most, a homeowner who knew about roaches in the home. He is not alleged to have selected, recommended, purchased, or placed the insecticide inside the home—against the express warnings on the label. He is not even alleged to have known about Plaintiff's improper use of the insecticide inside the home.

4.      Because the Complaint offers no basis for Plaintiff to recover against Foust in these circumstances, he is deemed fraudulently joined and must be ignored for purposes of assessing diversity jurisdiction. *E.g.*, *McFadden v. Fed. Nat. Mortg. Ass'n*, 525 F. App'x 223, 227 (4th Cir. 2013). Foust's consent is also not required for removal under 28 U.S.C. § 1446(b)(2)(A). *See Pipe & Boiler Insulation, Inc. by & through Protopapas v. Cont'l Ins. Co.*, No. CV 3:21-3033MGL, 2022 WL 1157242, at *3 (D.S.C. Apr. 19, 2022) (citing *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993)).

## BACKGROUND

5.      Plaintiff Nyeaijah Saxon, individually and as Personal Representative of the Estate of her minor daughter, M.F., filed her Complaint on October 16, 2025, in the South Carolina Court of Common Pleas for Barnwell County (the "State Court Action").

6.      Plaintiff alleges that the residence where she and M.F. lived had a cockroach infestation. Compl. ¶ 13.

7.     Defendant Jaycee Foust, Jr. is alleged to be the owner of the residence. *Id.* ¶ 10.

8.     Plaintiff alleges that she purchased "Ortho Orthene," an insecticide manufactured by Scotts and sold by Wal-Mart, and placed it inside the home to treat the cockroaches. *Id.* ¶¶ 2, 12–13.

9.     She alleges "social media videos . . . prompted" her to use the Ortho Orthene inside the home. *Id.* ¶ 13.

10.     Plaintiff's claims against Scotts and Wal-Mart arise from those Defendants' alleged defective or inadequate warnings or instructions on Ortho Orthene.

11.     The warnings or instructions, according to Plaintiff, "did not make it clear" that she should not use it inside the home. *Id.* ¶¶ 2, 13. (Scotts and Wal-Mart's forthcoming Motion to Dismiss will describe and depict the label in question, which states on the front, in capital letters, that it is "**FOR OUTDOOR HOME USE ONLY**" and specifically "**CAUTION[S]**" users to "**KEEP OUT OF REACH OF CHILDREN**," among other conspicuous warnings).

12.     In any event, according to the Complaint, on October 6, 2023, M.F. was eating food that fell on the floor, which came into contact with the Ortho Orthene and was then ingested by M.F. *Id.* ¶ 15. Tragically, M.F. became ill and died. *Id.*

13.     Plaintiff asserts causes of action for negligence against Scotts (Compl. ¶¶ 19–21) and Foust (*id.* ¶¶ 22–23), strict liability against Scotts and Wal-Mart (*id.* ¶¶ 24–29), breach of warranty against Scotts and Wal-Mart (*id.* ¶¶ 30–34), and negligent infliction of emotional distress against all Defendants (*id.* ¶¶ 35–39). Plaintiff seeks actual and punitive damages, as well as attorney's fees and costs. *Id.* ¶ 41.

14.     Plaintiff's *factual* allegations against Foust are only that he allowed the home to become infested with roaches and failed to implement reasonable pest control measures despite

the severity of the infestation. *Id.* ¶ 23. As explained below, those allegations give Plaintiff no possibility of recovering against Foust for this tragedy and removal on diversity grounds is appropriate.

## BASIS FOR REMOVAL

### A.    Jurisdictional and Procedural Requirements

15.    Federal district courts have original jurisdiction over actions between citizens of different states where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). Removal is proper under 28 U.S.C. §§ 1332(a) and 1441(a) because (1) there is diversity of citizenship among Plaintiff and all properly joined Defendants; and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs.

16.    The Complaint was served on Scotts and Wal-Mart on October 23, 2025. This Notice of Removal is being submitted within 30 days of service, so removal is timely under 28 U.S.C. § 1446(b).

17.    In accordance with 28 U.S.C. § 1446(a), true and correct copies of all process and pleadings served on Scotts and Wal-Mart in this action are attached hereto as **Exhibit 1**. As of the filing of this Notice of Removal, the time for filing responsive pleadings in the State Court Action has not expired, and no orders have been entered in the State Court Action. Promptly after filing this Notice of Removal, Scotts and Wal-Mart will give written notice of removal to Plaintiff through her attorney of record in the State Court Action, as well as to the Clerk of Court in the State Court Action, each as required by 28 U.S.C. § 1446(d).

18.    This case may be removed to this United States District Court pursuant to 28 U.S.C. §§ 1332, 1441(a), and 1453. The Barnwell County Court of Common Pleas is located within the jurisdiction of the United States District Court for the District of South Carolina,

- 4 -

Aiken Division. Venue is therefore proper in this Court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). This Notice of Removal is signed pursuant to Fed. R. Civ. P. 11. *See* 28 U.S.C. § 1446(a). Defendants have satisfied all other procedural requirements for removal, including that all properly joined Defendants have consented under 28 U.S.C. § 1446(b)(2)(A).

**B.**     **<u>Diversity of Citizenship</u>**

19.     All properly joined Plaintiffs and Defendants are citizens of different states, satisfying the diversity of citizenship requirements of 28 U.S.C. §§ 1332(a) and 1441(a).

20.     According to the Complaint, Plaintiff Nyeaijah Saxon was a citizen of Barnwell County, South Carolina at all relevant times. Compl. ¶¶ 1,10. She is the Personal Representative for the Estate of M.F., a minor child, who was her daughter and was also a resident of Barnwell County, South Carolina at all relevant times. *Id.*

21.     Defendant The Scotts Company, LLC is an Ohio corporation with its principal place of business in Ohio. *Id.* ¶ 2.

22.     Defendant Walmart Inc. (named in the Complaint as "Wal-Mart Stores, Inc.") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Arkansas. *Id.* ¶ 3.

23.     The Complaint alleges that Defendant Wal-Mart Stores East, L.P. is a limited partnership incorporated in the State of Delaware with its principal place of business in Arkansas. *Id.* ¶ 4. In fact, Wal-Mart Stores East, LP is a Delaware limited partnership. The citizenship of a limited partnership, for diversity jurisdiction purposes, is based upon the citizenship of each of its partners. The sole general partner of Wal-Mart Stores East, LP is WSE Management, LLC, and the sole limited partner of Wal-Mart Stores East, LP is WSE Investment,

LLC. The citizenship of these LLCs is determined by the citizenship of each of its members. The sole member of WSE Management, LLC and of WSE Investment, LLC is Wal-Mart Stores East, LLC. Wal-Mart Stores East, LLC is an Arkansas limited liability company. The sole member of Wal-Mart Stores East, LLC is Walmart Inc.

**C.      The Fraudulent Joinder Standard**

24.      Scotts and Wal-Mart are informed and believe, and on that basis allege, that Defendant Foust was wrongfully and fraudulently joined in this action for the sole purpose of attempting to prevent removal of this case to federal court. Plaintiff's attempt to avoid federal jurisdiction must fail.

25.      For purposes of determining whether complete diversity of the parties exists, the Court need only consider the citizenship of parties who are properly joined in the case. *See, e.g.,* *Bessinger v. Food Lion, Inc.,* 305 F. Supp. 2d 574, 578 (D.S.C. 2003), *aff'd non-published op.* *Bessinger v. Food Lion, LLC*, 115 F. App'x 636, 638 (2004). Where a plaintiff adds defendants against whom the plaintiff has no actual claim, for the sole purpose of defeating diversity jurisdiction, the citizenship of such "fraudulently joined" parties should be disregarded. *Id.*; *see also AIDS Counseling & Testing Centers v. Group W Television, Inc.*, 903 F.2d 1000, 1003 (4th Cir. 1990) (affirming refusal to allow amendment to add party and deprive the district court of diversity jurisdiction). *Id.*

26.      The fraudulent joinder doctrine permits removal where the plaintiff attempts to prevent removal by strategically joining non-diverse or "sham" parties. *Bessinger*, 305 F. Supp. 2d at 577. Under the fraudulent joinder doctrine, a district court can assume jurisdiction over a case even if there are non-diverse named defendants when the case is removed. *See id.* at 578.

27. The focus of the fraudulent joinder inquiry is on whether a cause of action exists, regardless of whether the plaintiff's decision to pursue the action was improperly motivated. *See AIDS Counseling & Testing Centers*, 903 F.2d at 1003 (noting that "[f]raudulent joinder" is a "term of art" that "does not reflect on the integrity of plaintiff or counsel, but is merely the rubric applied when a court finds either that no cause of action is stated against the nondiverse defendant, or *in fact* no cause of action exists").

28. In the Fourth Circuit, "to show fraudulent joinder, the removing party must demonstrate either outright fraud in the plaintiff's pleading of jurisdictional facts or that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in the state court." *Benjamin v. Wal-Mart Stores, Inc.,* 413 F. Supp. 2d 652, 654 (D.S.C. 2006).

**D.     Defendant Foust Is Fraudulently Joined**

29. In this case, Plaintiff does not allege facts against Defendant Foust sufficient to establish or maintain a cause of action for negligence or negligent infliction of emotional distress, the only two counts pleaded against him.

30. To establish a cause of action for negligence under South Carolina law, Plaintiff must prove the following three elements: 1) a duty of care owed by defendant to the plaintiff, or facts from which such duty may be inferred; 2) breach of that duty by a negligent act or omission, and 3) damage proximately resulting from that duty. *Baggerly v. CSX Transp., Inc.*, 635 S.E.2d 97, 101 (S.C. 2006), *Creech v. Char*, 45 S.E. 86, 89 (S.C. 1903).

31. To establish a cause of action for negligent infliction of emotional distress, a plaintiff must first demonstrate, as a threshold, that the defendant was negligent. *Kinard v. Augusta Sash & Door Co.*, 336 S.E.2d 465, 467 (S.C. 1985).

32.     The Complaint fails to state either cause of action against Defendant Foust because it alleges no facts supporting any possible inference that (1) Foust had a duty of care to her or to M.F., or that (2) Foust breached any such duty merely by allegedly failing to prevent or treat roaches in the home, or (3) that any such breach to prevent roaches proximately caused M.F.'s death in light of the admission that Plaintiff herself placed the insecticide inside the home.

33.     Lacking allegations supporting a duty, breach, or proximate causation, the Complaint offers Plaintiff no possibility of establishing either cause of action against Foust.

34.     The factual allegations against Foust are exceedingly sparse.  Though Plaintiff asserts certain legal conclusions relating to Foust (e.g., that he was "negligent" and "fail[ed] to act in a reasonably prudent manner"), Plaintiff alleges only the following *facts* as to him:

> a. Foust is a South Carolina resident who owned the home in which Plaintiff and M.F. were residing at the time of M.F.'s death.  Compl. ¶¶ 6, 10.
>
> b. Foust failed to implement reasonable pest control measures in his home despite the severity of the infestation.  *Id.* ¶ 23(a).
>
> c. Foust allowed the home to become infested with roaches.  *Id.* ¶ 23(b).

### E.     The Complaint Establishes No Duty to Plaintiff in Her Personal Capacity

35.     As for the allegations concerning Foust's duty to Plaintiff in her personal capacity, Plaintiff does not allege that she was his tenant or his business invitee.  Absent such assertions, the only reasonable inference is that Plaintiff was a licensee in Foust's home.  *Harris v. Univ. of S.C.*, 706 S.E.2d 45, 47 (S.C. Ct. App. 2011) (defining licensees as those "privileged to enter upon the land by virtue of the possessor's consent").

36.     A homeowner's duty to licensees is very limited under South Carolina law.  The homeowner has no duty to make the premises safe for a licensee.  *Singleton v. Sherer*, 659 S.E.2d 196, 204 (S.C. Ct. App. 2008).

37.     "Since a licensee is there for his own benefit, he can be said to accept the premises as they are and demand no greater safety than his host provides for himself." *Templeton v. Bishop of Charleston*, 2021 WL 5770306, \*3 (D.S.C. 2021) (citing *Sims v. Giles*, 541 S.E.2d 857, 862–63 (S.C. Ct. App. 2021)).

38.     Plaintiff Nyeaijah Saxon, an adult licensee, fails to allege facts in her Complaint that would create a duty on the part of Foust to do, or refrain from doing, anything to the home for her particular benefit.

**F.     The Complaint Establishes No Heightened Duty to M.F.**

39.     As for Foust's duty <u>to the child, M.F.</u>, South Carolina law recognizes the potential for a heightened duty to children in two contexts.  The <u>first</u> is in the context of a classic "attractive nuisance."   In those cases, a landowner "is bound, in the exercise of social duty and the ordinary offices of humanity, to take reasonable pains to see that such dangerous things are so guarded that children will not be injured in coming in contact with them . . . ." *Everett v. White*, 245 S.C. 331, 336–37 (quoting *Franks v. S. Cotton Oil Co.*, 78 S.C. 10, 15 (1907)).

40.     The <u>second</u> context is when something "is so *left exposed* that [children] are likely to come in contact with it, and where their coming in contact with it is obviously dangerous to them, *the person so exposing the dangerous thing* should reasonably anticipate the injury that is likely to happen to them, from its being so exposed, and is bound to take reasonable pains to guard it, so as to prevent injury to them." *Id.* (quoting *Franks*, 78 S.C. 15) (second emphasis added).

41.     Neither of those two contexts is alleged in the Complaint.

42.     As to the first (attractive nuisance), the Complaint does not state or imply (nor could it) that insecticide powder is especially attractive to children.

43.     As to the second (exposed danger), the Complaint does not allege that Foust exposed M.F. or anyone else to a dangerous insecticide.  To the contrary, Plaintiff alleges that *she alone* exposed her daughter to the insecticide, choosing the follow recommendations she saw in "social media videos," Compl. ¶ 13, which were directly contrary to the conspicuous warnings on the label.

44.     Plaintiff does not allege that Foust did any of the following:

   a.   Selected the insecticide;

   b.   Recommended the insecticide for use indoors;

   c.   Purchased the insecticide;

   d.   Placed the insecticide indoors;

   e.   Knew that Plaintiff planned to use, or did use, the pesticide indoors against the express warnings on the label; or

   f.   Was even home during, or at any point near in time to, the exposure incident.

45.     The Complaint therefore does not allege facts creating any duty on the part of Foust to protect M.F. from a misused insecticide she was exposed to in the home.

**G.     The Complaint Fails to Allege that Foust Proximately Caused Any Injury**

46.     Plaintiff's Complaint also fails to allege that the roach infestation was the proximate cause of either M.F.'s death or Plaintiff's own alleged emotional distress.

47.     "A negligent act or omission is a proximate cause of injury if, in a natural and continuous sequence of events, it produces the injury, and without it, the injury would not have

- 10 -

occurred." *Shepard v. S.C. Dep't of Corr.*, 299 S.C. 370, 374 (Ct. App. 1989) (*citing Driggers v. City of Florence*, 190 S.C. 309, 2 S.E.2d 790 (1939)). "An act or omission that does no more than furnish the condition or give rise to the occasion by which the injury is made possible is not the proximate cause of the injury." *Id.* Furthermore, "foreseeability of some injury from the act or omission is a prerequisite to its being the proximate cause of the particular injury complained of." *Id.* (citations omitted).

48.     Here, at worst, Foust is alleged only to have failed to implement pest-control measures, which allowed cockroaches to infest a home that he owned.

49.     Not a word in the Complaint connects him to the pesticide that allegedly led to M.F.'s death after Plaintiff improperly applied it indoors, contrary to its label stating it is "**FOR OUTDOOR HOME USE ONLY**" and "**CAUTION[S]**" users to **"KEEP OUT OF REACH OF CHILDREN**," all of which Plaintiff fails to mention in her Complaint.

50.     In these circumstances, the Complaint does not support the inference that Foust's breach of any such duty to Plaintiff or to M.F.—even assuming that one existed—was the proximate cause of M.F.'s death.

51.     At worst, by allegedly failing to implement reasonable pest control measures, Foust might be said to have "furnish[ed] the condition or g[a]ve rise to the occasion by which the injury [was] made possible." *Shepard*, 299 S.C. at 374. As a matter of law, however, that is not the proximate cause of the injuries alleged in the Complaint, which arose because Plaintiff failed to heed the express warnings on the insecticide's label and used it indoors, apparently within easy reach of children.

*         *         *

52.    Having failed to allege facts that plausibly create such duties, breaches, or proximate causation, Plaintiff cannot establish against Foust a cause of action for negligence or negligent infliction of emotional distress.

53.    Foust was therefore wrongfully and fraudulently included as a Defendant here, and he can be ignored for purposes of assessing the Court's diversity jurisdiction.

54.    Accordingly, at the time the Complaint was filed and served and on the date of removal, complete diversity of citizenship existed and exists between Plaintiff and the properly joined Defendants: Scotts and Wal-Mart.

**H.    Amount in Controversy**

55.    The jurisdictional amount in controversy is satisfied where the defendant demonstrates to a legal certainty or within a reasonable probability that the amount in controversy exceeds $75,000.  *Brooks v. GAF Materials Corp.*, 532 F. Supp. 2d 779, 781–82 (D.S.C. 2008).

56.    The damages sought here include unspecified compensatory damages resulting from the death of a child.  Although Defendants dispute liability and damages, it is self-evident that Plaintiff seeks monetary relief exceeding $75,000.  *See, e.g., Thompson v. Victoria Fire & Cas. Ins. Co.*, 32 F. Supp. 2d 847, 849 (D.S.C. 1999) (the amount in controversy exceeds $75,000 where the complaint sought compensatory damages, punitive damages, and attorneys' fees and costs beyond the actual damages claimed).

### CONCLUSION

57.    Therefore, Scotts and Wal-Mart remove this action to the United States District Court for the District of South Carolina, Aiken Division, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

Dated: November 21, 2025

_s/ Austin T. Reed_

**SMITH│ROBINSON**
**Smith Robinson Holler DuBose and Morgan,**
**LLC**

G. Murrell Smith, Jr., Fed ID #6120
Post Office Box 580
Sumter, SC  29151-0580
(803) 778-2471
murrell@smithrobinsonlaw.com

Austin T. Reed, Fed ID #13405
3200 Devine Street
Columbia, SC 29205
(803) 254-2445
austin.reed@smithrobinsonlaw.com

-AND-

Thomas R. Waskom, *pro hac vice* forthcoming
HUNTON ANDREWS KURTH LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627
Telephone:    213 • 532 • 2000
Facsimile:     213 • 532 • 2020
twaskom@hunton.com

Brian A. Wright, *pro hac vice* forthcoming
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 E. Byrd Street
Richmond, Virginia 23219
Telephone:    804 • 788 • 8710
Facsimile:     804 • 788 • 8218
wrightb@hunton.com

*Attorneys for Defendants The Scotts Company,*
*Wal-Mart Stores, Inc., and Wal-Mart Stores*
*East, L.P.*